In the United States Court of Appeals for the Sixth Circuit

John Doe,
Johnson Doe I,
Johnson Doe II, and
Johnson Doe III,
        Appellants,

v.                                                     Appeal Case No 19-6019

State of Tennessee,

William Byron Lee,
in his official capacity as the Governor of the State of Tennessee;

Herbert Slatery, III,
in his official capacity as the Attorney General of the State of Tennessee;

Deborah Taylor Tate,
in her official capacity as the Administrator of State Courts of the State of Tennessee;

Jane Doe;

Kirk Vandivort;

Reynolds Potter, Ragan, & Vandivort, PLC;

Hon. Craig Monsue,
in his official capacity as Judge of the Dickson County General Sessions Court;

Hon. David Wolfe,
in his official capacity as a Chancellor of Dickson County Chancery Court;

Dickson County Circuit Court; and

Dickson County General Sessions Court;
        Appellees.

## Motion for Panel Reconsideration and Rehearing En Banc

    Appellant, John Doe, respectfully moves for panel rehearing and rehearing En banc, pursuant to FRAP R. 35 & 40.


John Doe, Pro Se
johndoeplaintiff@gmail.com

## Statement on En Banc Oral Argument

John Doe requests oral argument if rehearing en banc is granted. Given the number of claims, the complexity of the case, and the potential precedent-setting, it would benefit the Court and the parties to have the opportunity to clarify their positions.

## Procedural Basis for Panel Rehearing

The Panel's order is based upon misunderstanding of the record. In the alternative, the Panel is departing from long-held precedent regarding issues of standing, ripeness, and mootness.

## Procedural Basis for Rehearing En Banc

Given the district court's overbroad application of the domestic relations exception as to federal law claims, the Court sitting *en banc* has an opportunity to determine a broader issue: whether the domestic relations exception applies to federal law claims. Specifically, Claims 3 & 4 challenge the Tennessee child custody statute as contrary to the federal Americans with Disabilities Act. There is currently a split in the circuits regarding application of the domestic relations exception to federal law claims, with this circuit not having yet conclusively weighed in since the Supreme Court decided *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). *See discussion Alexander v. Rosen,* 804 F. 3d 1203, 1205 (6th Cir. 2015). However, the Panel decision decided this case on narrower or alternative

grounds, which seem to depart from well-established doctrines regarding standing and mootness.

## Introduction

The Americans with Disabilities Act (ADA) was signed into law by Republican President George H.W. Bush, who at that time had no idea that he would be bound to a wheelchair late in his life. Anyone can be disabled. Doe is seeking to ensure that the discrimination he experienced in Tennessee does not continue and that legal pursuit is not moot.

## Factual and Procedural Clarifications

The Panel stated that in Claims 1 and 2 Doe alleges, "the defendants violated his rights by causing the issuance of a no-contact order in violation of Tennessee law and his Fourteenth Amendment due process, and he sought declaratory and injunctive orders modifying the no contact order and restoring his parent child rights." Panel Order at 3. However, John Doe in Count #1 seeks not just to void a now-expired order of protection, but also a declaratory relief providing statutory interpretation that "Tenn. Code Ann. § 36-3-606(a) does not permit an order of "no contact" with the [r]espondent's minor children. Child abuse is a matter for the juvenile courts in Tennessee." Doc. 23 at PageID# 259-262, ¶80-98. *See also* Appellant's Brief at 4. Likewise, the Panel neglected to note that in Count #2, John Doe seeks declaratory judgment that:

> "An Order of Protection that includes a "no contact" provision as to the Respondent's minor children, infringes fundamental parental and child rights, protected by §5 of the 14th Amendment to the U.S. Constitution.
>
> Therefore, notice of that deprivation must be clearly articulated by statute and it is not so articulated. The state law practice to allow a provision of a "no contact" order between a Protective Order Respondent and the Respondent's Minor Children is based upon an unconstitutionally vague interpretation of law.
>
> Furthermore, procedural safeguards are required to protect against the wrongful deprivation of these fundamental parent-child rights, the sufficiency of [which] is not at issue, as the state has provided no safeguards.
>
> Therefore, the state's practice of allowing a protective order under [Tenn.] Code. Ann §36-3-601 *et seq*. to include "no contact" between a respondent and the parties minor children is wholly unconstitutional under the 14th Amendment to the U.S. Constitution."

Doc. 23 at PageID# 262-63 ¶102 (Further moot declaratory relief omitted); *See also* Appellant Brief at 4-5. Claims #1 & 2 were not just about an expired order of protection, but about challenging a state statute and practice.

The Panel stated that in Claims 3 & 4 Doe alleges that "the State and County defendants violated his rights under the ADA by relying on Tennessee Code §36-6-106 [child custody determination statute] when issuing the no-contact order based in part on his mental health and he sought declaratory and injunctive orders voiding the no-contact order and restoring his parental rights." Panel Order at 3. However, in issuing the no contact order, the county judge stated he was not making a custody decision. Doc. 23 PageID#47 ¶43. In fact, Doe is challenging

4

the statute itself as superseded by the ADA.  In Count #3, Doe asks for declaratory judgment that:

> "Tenn. Code §36-6-106(a)(8) is void on its face, as it permits consideration of a parent's disability in violation of Title II of the American with Disabilities Act, 42 U.S.C. §12131 *et seq.*"

Doc. 23 PageID#58 ¶110 (further moot declaratory relief omitted.)  *See also* Appellant Brief at 5.

 Likewise, as to Claim #4, Doe seeks declaratory judgment that:

> "A Tennessee court may consider a parent's ADA-protected disability in child custody and visitation determinations, under Tenn. Code. Ann. § 36-6-106 *only* to the extent that the unmitigated risk stemming from the parent's disability poses a direct threat to the health, safety, and welfare of the child(ren).
>
> A litigant in a child custody and visitation matter, who alleges a parent, due to an ADA-protected disability, poses a direct threat to the child(ren), has the burden of proof to show, by clear and convincing evidence, of a medical or objective nature,  not stigma or generalized fear, that there currently exists an increased probability of injury or harm to the child(ren) due the parent's disability, and 2.) the risk is not sufficiently mitigated by treatment or auxiliary aids.
>
> Upon such a showing, the court may consider the nature, duration, and severity of the unmitigated risk arising from the parent's disability as a factor in making determinations of custody and visitation."

Doc 23. Page ID#59-60 ¶118. (further moot declaratory relief omitted.)  *See also* Appellant Brief at 5.

The Panel described Count #5 as, "the State and County defendants violated his rights under the ADA because he was ordered to pay for a mental-health

evaluation and for a professional visitation supervisor, and he sought declaratory and injunctive orders that the state courts improperly ordered him to pay for those services." Panel Order at 3. However, John Doe is not challenging *specific instances* of imposition of a fee, but a state practice in seeking declaratory relief:

> Title II of the Americans with Disabilities Act prohibits a state court from directly or indirectly imposing the costs of a Rule 35 exam on a person who is disabled or regarded as being potentially disabled.
>
> Title II of the Americans with Disabilities Act prohibits a state court from directly or indirectly requiring a parent that is a qualified individual with a disability to pay for supervision of child visitation, where supervision is ordered to make accommodation for the parent's disability.

Doc 23 at PageID 267 ¶123. *See also* Appellate Brief at 5.

Also, the Panel stated Claim #10 as, "the State defendants violated his Fourteenth Amendment rights by failing to ensure all court proceedings were recorded verbatim and provided to him at no cost, impairing his ability to obtain meaningful appellate review of the state court actions, and he sought declaratory and injunctive orders that such proceedings be recorded and provided to parties at no cost." However, costs are not the issue; the issue is there is no transcript to purchase if litigants do not bring their own court reporter. Doc 23, PageID #65-66; The relief sought is declaratory judgment that:

> To ensure procedural due process under the 14th Amendment of the United States Constitution, Defendants must take immediate action to ensure all hearings in courts of record are contemporaneously recorded verbatim, by any means deemed appropriate and cost effective, such as digital audio

recording devices, court reporters, stenographers, and the like.  Such verbatim recording shall be taken at all proceedings as matter of course, without prior request of the parties and at no advance cost to the parties.

Doc 23, Page ID#66 ¶162.

I. **THERE ARE NO MOOT CLAIMS IN THIS CASE, THOUGH SOME *RELIEF* ORIGINALLY SOUGHT IS MOOT.**

As of February 2019, the protective order leading to many of the issues in this case was no longer in effect as to the Doe children, yet at that time no party raised the issue of possible mootness in the district court.  Instead, the issue was raised for the first time by the State Appellees in their Brief:

> Plaintiff asserts in passing that he "no longer seeks relief voiding state court orders, as the state orders at issue are no longer currently in effect." (Br. Appellant, 6; *see also id.* at 8 n.1 (asserting that "this requested relief [invalidating state-court orders] is now moot").) Plaintiff's assertions cannot be taken to mean, however, that there are *no* custody and visitation orders currently in effect in his state-court divorce proceeding, as Plaintiff's final divorce decree most certainly includes just such orders. (*See* Motion, RE 115, Page ID# 730 (filing transcript of hearing on final divorce decree).) Insofar as Plaintiff's assertions may be taken to mean that he is no longer seeking to have the federal court intercede in his state-court divorce and custody proceedings, that would render his case moot because, as discussed above, that is the core of his federal complaint. But such mootness would essentially lead to the same result as that reached by the District Court here—dismissal of the case for lack of jurisdiction. *Cf. Haddad v. Ashcroft*, 76 F. App'x 672, 673 (6th Cir. 2003) (citing *United States v. Munsingwear*, 340 U.S. 36, 39 (1950)) ("When a matter becomes moot on appeal, the proper course is to vacate the district court's [merits] decision and remand with instructions to dismiss the complaint.").

State Appellees' Brief at 15-16, n. 9. Perhaps shortsightedly, Doe replied with a mere footnote as well:

> "The State Appellants in a footnote allude to this case being potentially moot. This argument is not fully developed. Further, it is incorrect. Protective orders may be issued again in the same divorce, thus capable of repetition yet evading review. Further, the monetary damages sought present a live controversy."

Reply Brief at 5, n.3. In affirming dismissal of Claims 1-4 the Court relied on mootness, "…as Doe now acknowledges, that order is no longer in effect…we must dismiss as moot." Panel Order at 5. However, these claims are moot only as it relates to relief aimed at a specific protective order, not[1] to the challenges of Tennessee statutes and practices.

As a general rule, in reviewing dismissal:

> "We review a district court's grant of a motion to dismiss de novo. *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.,* 864 F.3d 455, 458 (6th Cir. 2017). Under that standard, a motion to dismiss is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, the plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

[1] The Governor of the State of Tennessee was named as a party in an official capacity primarily to enjoin executive (criminal) enforcement of state court orders. As it currently stands, this case challenges statutes and Tennessee court practices; therefore, the office of the governor's role in this case *has* likely diminished to the point of mootness. Upon remand, on that basis, the governor should be dismissed without prejudice as a party.

> The reviewing court must accept the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 716 (6th Cir. 2005). This Court may affirm the district court's dismissal of the plaintiff's claims on any grounds present in the record, including grounds not relied upon by the district court. *Long v. Insight Commc'ns of Cent. Ohio, LLC,* 804 F.3d 791, 794 (6th Cir. 2015); *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 547-48 (6th Cir. 1999)

*Lipman v. Budish,* \_\_\_\_F.3.d\_\_\_\_\_, Case no.19-3914, Slip opinion marked for publication at 16, (6th Cir. 2020). In short, there is no heightened pleading standard by which a plaintiff must include in his complaint additional legal argument as to every potential basis for dismissal that may be raised by the defendants, in the district court or upon appeal.

Injury (actual, certainly impending, or imminently threatened) is required for a justiciable controversy. *Clapper v. Amnesty International USA*, 133 S.Ct 1138, 1147 (2013), citing *Monsanto Co. v. Geertson Seed Farms*, 30 S.Ct. 2743, 2752 (2010); *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, n.2. n.3 (1992); *Whitmore v. Arkansas*, 495 U.S. 149, 158(1990); *Daimler-Chrysler Corp. v. Cumo,* 547 U.S. 332, 345 (2006); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000); *Babbitt v. Farm Workers,* 442 U.S. 289 (1979). The issue is really whether the plaintiff has a concrete injury for which relief can be had.

However, even where an injury has lost its immediacy, such claims are not moot where an injury is capable of repetition to the yet evading review, specifically where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality. *Los Angeles v. Lyons,* 461 US 95, 109 (1983). This doctrine originated in a 1911 Supreme Court case, *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498.

## A. Claims 1 and 2 Are Not Moot as John Doe Is Subject, Under State Law, to Jane Doe Filing A New Order of Protection Involving His Ex-Wife and Children at Any Time,

In *Hall v. Hall,* an unpublished 2014 Tennessee Court of Appeals case, (attached) a father obtained a new order of protection against the mother, which included the children, years after the original protective order had expired and a divorce had been granted with shared and equal placement. This practice was not described in the Amended Complaint, but the Court can take judicial notice. Regardless, the statute and the related court form at issue are still in effect. An order of protection in Tennessee, unless extended, lasts only a year. Tenn. Code § 36-3-608(a). However, a new order of protection could be entered at any time keeping John Doe from his children and Doe lives in fear of this every day. In the alternative, regardless of a live controversy, Claims 1 & 2 clearly meet the criteria for capable of repetition yet evading review as to John Doe.

In addition, the Supreme Court has long held challenges to completed criminal sentences are not moot where there is a collateral consequence. *Sibron v. New York,* 392 US 40, 50-58 (1968). Doe sees no reason why that may not be extended into the civil context, when collateral legal issues exist as well. Here, declaratory judgment on Claims 1-2, regarding legality of removing the Doe children from John Doe in a protective order proceeding, has an impact on the Does' ADA monetary claims. For the purposes of the monetary claims, whether the Defendants were acting properly according to state law and the 14th Amendment is a potential consideration.

**B. Claims 3 and 4 Challenging the State of Tennessee Custody Statute Are Not Moot.**

Since the filing of the Amended Complaint in this case, the Dickson County Chancery Court issued a custody order that requires John Doe to continue receiving mental health treatment. Furthermore, Doe still has a mental health diagnosis and the challenged statute, Tenn. Code §36-6-106, is still in effect and will govern determination of the Doe children's custody and visitation until Johnson Doe III turns eighteen. *Kendrick v. Shoemake,* 90 SW 3d 566, 570 (Tenn. 2002) (holding statutory criteria applies to motions to modify child custody.)

In fact, while this matter has been on appeal, the Dickson County Chancery Court has denied John Doe's post-divorce motion to modify custody and

placement. There is no limit to how often the Doe's may end up in the Tennessee courts to litigate under the statutes over the next 13 years. The Doe family is operating under a custody order made under the challenged statute. This statute poses an ongoing injury and threat of further injury; therefore, the challenges to the statute present a truly live controversy and are not moot.

In the alternative, these claims are certainly capable of repetition, yet evading review.

## C. Claim #5, Regarding Examination Fees Constituting an Illegal Surcharge, Is Ripe and Doe Has Standing.

In Claim #5, the Court relied on standing, but this supposed lack of standing is couched in mootness, "Because Doe does not allege that he is likely to be ordered to pay for an evaluation in the future, he does not have standing to raise Count #5." Order at 5. As noted *supra*, Doe can be haled into a Tennessee child custody proceeding at any time, where he can again be subjected to an examination as imposed under Tenn. Code §36-6-106(a)(8). Thus, at a minimum, the matter is capable of repetition, yet evading review.

However, this matter arguably remains a live controversy or has collateral legal issues. Upon the close of his initial divorce proceedings, Doe moved the Dickson County Chancery Court to impose the costs of the exam on Jane Doe,

which was denied by separate order. Upon prevailing on this claim, Doe could (and would) use it as the basis for a state court motion for relief from the chancery court costs decision.

## II. AS TO CLAIM #9, A STATE LAW CLAIM FOR ABUSE OF PROCESS AGAINST JANE DOE, STANDING MUTE ON THE ISSUANCE AND SERVICE OF THE SUMMONS DOES NOT EQUATE TO ABANDONING A CLAIM.

Jane Doe filed a motion in the district court challenging issuance and service of the summons which was issued to her pseudonym. *See generally* Doc. # 82-85, beginning at Page ID #581. In filing her motion, she used her real name, which at the time was the same uncommon surname as the rest of the Doe family. *Id*. Responding to her motion created a "Catch-22" situation on proceeding pseudonymously; Doe deemed it wise to stand mute on the issue. The summons could have been re-issued and re-served if the district court had ruled for Jane Doe. This is not the same thing as abandoning the abuse of process claim.

Ultimately, the abuse of process claim was dismissed by the district court electing not to exercise supplemental jurisdiction. *See* Magistrate Recommendation, Doc #112, Page ID#717-18. On remand, rather than having the

Court deem the matter withdrawn, the district court should be permitted to determine the status of the claim.[2]

## III. COUNT 10 REGARDING THE DUE PROCESS REQUIREMENTS OF MAINTAINING A CONTEMPORANEOUS VERBATIM RECORD OF TENNESSEE CIVIL COURT PROCEEDINGS DOES NOT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

This claim is not about free transcripts! Doc. 23 Page ID#65-67, ¶154-164. *See also* Appellant Brief at 22. For the purposes of this proceeding, the *cost* of obtaining the transcript or recording after a hearing is not at issue. The Panel's decision cites cases in which there was a transcript available for purchase because a court reporter was actually present at the proceedings, procured by the government. Panel Order at 7. However, that is not this case here.

Here, the issue is that Tennessee courts require litigants to secure their own court reporter for civil court hearings and trials, otherwise no verbatim contemporaneous record is made. If there is no due process requirements for what the state needs to provide for their court proceedings, maybe civil litigants in Tennessee should have to bring their own clerk, bailiff, and judge too, or perhaps

---

[2] Once Jane Doe's maiden name was restored by the divorce, substituting the real party in interest by her actual maiden name seemed like a potential resolution of the issue.

reserve and rent the hearing space. However, Doe believes he has a 14th Amendment due process right to expect that when appearing in a state civil "court of record" a contemporaneous verbatim record is being made by the Tennessee government. This claim is a good faith argument for extension of existing case law, namely *Flaim v. Medical College of Ohio,* 418 F.3d 629, 636 (2005) and *Singh v. Holder,* 638 F.3d 1196, 1208 (9th Cir. 2011) (requiring immigration hearings to be audio recorded). In fact, this Circuit's case law expressly left this issue as an open question:

> "It is always wise to produce some sort of record of the proceedings, whether it be a transcript or recording, though a record may not always be constitutionally required."

*Flaim,* 418 F.3.d 629, 636, *citing Jaksa v. Regents of Univ. of Mich.,* 597 F.Supp. 1245, 1252 (E.D.Mich.1984), aff'd, 787 F.2d 590 (6th Cir.1986) *and Trahms v. Trustees of Columbia Univ.,* 245 A.D.2d 124, 666 N.Y.S.2d 150, 151 (N.Y.App.Div.1997). In an actual civil state court proceeding, as opposed to school disciplinary hearings like in *Flaim,,* Fourteenth Amendment due process must require taking of a contemporaneous verbatim record. No one should have to appear in front of a state judge without a verbatim record of the proceedings being made.

## Conclusion

It is possible that Doe could resolve many of these issues on remand by offering a second amended complaint. However, Doe is not required to plead with such specificity, unless this Court intends to impose heightened pleading requirements. It seems prudent to address this issue here.

Furthermore, it is concerning that the Panel opinion seemed to invite the district court to find reasons to dismiss the few claims it reinstated. Panel Order at 8. This Court should be inclined to avoid successive appeals, especially on threshold issues on jurisdiction, not invite them. Doe expected and anticipated a decision that resolves all threshold jurisdictional, immunity, and abstention issues. *See generally* Appellant's Reply Brief (replying to Appellee's arguments raising mootness, *Younger* abstention, absolute immunity, and potential failure to state a claim.)

Times are challenging, but the panel decision is clearly flawed and needs rehearing. The lack of due process Tennessee affords litigants, and specifically mentally ill parents, in her civil courts is abhorrent: no court reporters provided or audio recordings made; children taken on a preponderance of the evidence standards by accusations of a scorned parent; children taken without DHS investigation or a GAL appointed for them; children taken simply due to the

parent's mental health diagnosis; and the Americans with Disabilities Act something to mock in court. The Tennessee legal community is convinced what is wrong is right. The United States citizens haled into the courts of Tennessee deserve to have basic due process and ADA protections.

Respectfully Submitted,
September 30, 2020

                                        /s/John Doe_____
                                        John Doe
                                        Appellant

johndoeplaintiff@gmail.com

## Certification of Compliance

I certify that this document contains 3,821 words.  The body text is in 14-point Times new Roman font.

/s/John Doe_____<br>
John Doe<br>
Appellant

## Certificate of Service

I certify that on September 30, 2020, I mailed a copy of this document, and the attached unpublished case, via USPS First Class mail to:

| AAG Jordan Crews<br>500 Charlotte Ave<br>Nashville, TN 37243 | Mr. Daniel Mark Nolan<br>Batson, Nolan, Brice, Williamson & Girsky<br>121 South Third St<br>Clarksville, TN 37041 | Jane Doe<br>4158 Hwy 96<br>Burns, TN 37029 |
|---|---|---|

/s/John Doe_____<br>
John Doe<br>
Appellant